IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL GONZALEZ, JR., a minor by and through his Guardian ad Litem, MARIA GONZALEZ, et al.,<br><br>Plaintiffs,<br>vs.<br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | CASE NO. CV F 09-0509 LJO SMS<br><br>**SUMMARY JUDGMENT DECISION**<br>(Doc. 59.) |

## INTRODUCTION

Defendant neonatogolist Gurvir Khurana, M.D. ("Dr. Khurana") seeks summary judgment on plaintiffs' medical malpractice and related claims in that Dr. Khurana met the standard of care in treating minor plaintiffs Miguel Gonzalez, Jr. ("Miguel") and his mother plaintiff Maria Gonzalez ("Ms. Gonzalez") during Miguel's birth. Plaintiffs filed no papers to oppose summary judgment. This Court considered Dr. Khurana's summary judgment motion on the record[1] and VACATES the October 3, 2011 hearing, pursuant to Local Rule 230 (c), (g). For the reasons discussed below, this Court GRANTS Dr. Khurana summary judgment.

---

[1] In the absence of plaintiffs' opposition, this Court carefully reviewed and considered the entire record to determine whether the Dr. Hhurana's summary judgment motion is well supported. Omission of reference to an argument, document or paper is not to be construed to the effect that this Court did not consider the argument, document or paper. This Court thoroughly reviewed, considered and applied the evidence and matters it deemed admissible, material and appropriate for summary judgment.

1

# BACKGROUND

## Summary

Complications arose during Miguel's August 1, 2007 birth a Kern Medical Center ("KMC") in Bakersfield. Miguel has severe brain damage. Directly after Miguel's birth, Dr. Khurana treated Miguel in the KMC Neonatology Intensive Care Unit ("NICU"). Miguel and Ms. Gonzalez pursue negligence claims against Dr. Khurana arising out of his care. Ms. Gonzalez and plaintiff Miguel Gonzalez ("Mr. Gonzalez"),[2] Miguel's father and Ms. Gonzalez' husband, pursue negligent infliction of emotional distress ("NIED") and loss of consortium claims against Dr. Khurana. Dr. Khurana contends that plaintiffs' claims fail in that he met the standard of care for neonatologists during his treatment.

## Miguel's Birth And Treatment

On August 1, 2007[3] at age 43, Ms. Gonzalez gave birth to Miguel at KMC after what Dr. Khurana describes as a "largely unremarkable course of pregnancy." Miguel presented in a breech, and forceps were used to deliver him at 11:39 a.m. Miguel weighed 3950 grams (roughly 8.7 pounds) and was gestationally at age 38 weeks, three days.

At delivery, Miguel was severely depressed, was floppy in terms of muscle tone, had an inaudible heart rate, and lacked spontaneous respirations, gag and grasp reflexes. Miguel's right pupil was unreactive to light, and his left pupil was sluggish to light. Miguel's respective APGAR scores were one, four and four at one, five and 10 minutes.

Dr. Khurana was not present in the delivery room at Miguel's birth but arrived shortly thereafter. Positive pressure ventilation 100 percent was started by a bag valve mask. Dr. Khurana suctioned Miguel and intubated Miguel at 11:41 a.m. with a three millimeter endotracheal tube. Miguel's heart rate and oxygen saturations improved, and by 11:42 a.m., his color improved.

Dr. Khurana's 11:41 a.m. intubation of Miguel was Dr. Khurana's first interaction with Miguel. Dr. Khurana had provided no prior treatment to Miguel or Ms. Gonzalez.

After intubation, Miguel was transferred to NICU for his perinatal depression. Dr. Khurana

---

[2] This Court will refer to Miguel and Mr. and Ms. Gonzalez collectively as "plaintiffs."

[3] Unless otherwise noted, all relevant events occurred on August 1, 2007.

2

placed Miguel on a mechanical ventilator, and umbilical arterial and venous line were placed without complication.

At 1:55 p.m. in NICU, Miguel exhibited respiratory distress and his endotracheal tube was obstructed with secretions. Dr. Khurana re-intubated Miguel with a 3.5 millimeter endotracheal tube without complication.

During the evening, Miguel was transferred to Children's Hospital of Los Angeles for a pediatric neurology consultation and further management. Dr. Khurana had no further involvement with Miguel's care.

**Plaintiffs' Claims**

Plaintiffs proceed on their First Amended Complaint ("FAC") to allege that Dr. Khurana's treatment of Miguel and Ms. Gonzalez was negligent to support plaintiffs' medical malpractice, NIED and loss of consortium claims. The FAC seeks recovery for plaintiffs' medical expenses, lost earnings, and emotional distress.

**DISCUSSION**

**Summary Judgment Standards**

Relying on the opinions of his expert neonatologist, Dr. Khurana contends that he complied with the applicable standard of care to negate necessary elements of plaintiffs' claims.

F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers*

3

1  *v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

2  On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(a), (c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (2007) (moving party is able to prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case"); *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

"[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598.

4

1  "If, however, a moving party carries its burden of production, the nonmoving party must produce
2  evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d
3  at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material
4  fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see*
5  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry
6  of summary judgment, after adequate time for discovery and upon motion, against a party who fails to
7  make the showing sufficient to establish the existence of an element essential to that party's case, and
8  on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine
9  issue as to any material fact,' since a complete failure of proof concerning an essential element of the
10 nonmoving party's case necessarily renders all other facts immaterial.")

11 F.R.Civ.P. 56(e)(2) requires a party opposing summary judgment to "set out specific facts
12 showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should,
13 if appropriate, be entered against that party." "In the absence of specific facts, as opposed to allegations,
14 showing the existence of a genuine issue for trial, a properly supported summary judgment motion will
15 be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988). When
16 a summary judgment motion is unopposed, a court must "determine whether summary judgment is
17 appropriate – that is, whether the moving party has shown itself to be entitled to judgment as a matter
18 of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990). A court
19 "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but, rather
20 must consider the merits of the motion." *United States v. One Piece of Real Property, etc.*, 363 F.3d
21 1099, 1101 (11th Cir. 2004). A court "need not sua sponte review all of the evidentiary materials on file
22 at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary
23 materials." *One Piece of Real Property*, 363 F.3d at 1101.

24 As discussed below, Dr. Khurana provides sufficient evidence to negate essential elements of
25 plaintiffs' claims to warrant summary judgment.

### **Medical Malpractice**

27 The FAC first and second claims allege that Dr. Khurana negligently treated Michael and Ms.
28 Gonzalez.

5

Dr. Khurana challenges plaintiffs' ability to establish his breach of professional duty in that Dr. Khurana met the neonatologist standard of care.

### *Elements*

Under California law, the elements for professional negligence, such as medical malpractice, are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Turpin v. Sortini*, 31 Cal.3d 220, 229-230, 182 Cal.Rptr. 337 (1982).

### *Standard Of Care, Breach And Causation*

Physicians specializing in a medical area are "held to that standard of learning and skill normally possessed by such specialists in the same or similar locality under the same or similar circumstances." *Quintal v. Laurel Grove Hospital*, 62 Cal.2d 154, 159-160, 41 Cal.Rptr. 577 (1964).

The general rule applicable to medical practice cases is:

> The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations], unless the conduct required by the particular circumstances is within the common knowledge of the layman. The "common knowledge" exception is principally limited to situations in which the plaintiff can invoke the doctrine of res ipsa loquitur, i.e., when a layperson is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised. The classic example, of course, is the X-ray revealing a scalpel left in the patient's body following surgery. Otherwise, expert evidence is conclusive and cannot be disregarded.

*Flowers v. Torrance Memorial Hospital Medical Center*, 8 Cal.4th 992, 1001, 35 Cal.Rptr.2d 685 (1994).

"What is or what is not proper practice on the part of the physician is uniformly a question for experts and can be established only by the testimony of such experts." *Sansom v. Ross-Loos Medical Group*, 57 Cal.App.2d 549, 553, 134 P.2d 927 (1943). "Plaintiffs thus needed opinions from qualified experts to establish a prima facie case." *Osborn v. Irwin Memorial Blood Bank*, 5 Cal.App.4th 234, 273, 7 Cal.Rptr.2d 101 (1992).

Moreover, "[n]egligence on the part of a physician or surgeon will not be presumed; it must be affirmatively proved." *Huffman v. Lindquist*, 37 Cal.2d 465, 474, 234 P.2d 34 (1951). In a medical

malpractice action, "causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case." *Jones v. Ortho Pharmaceutical Corp.*, 163 Cal.App.3d 396, 402-403, 209 Cal.Rptr. 456 (1985); *see Gotschall v. Daley*, 96 Cal.App.4th 479, 484, 116 Cal.Rptr.2d 822 (2002) ("[E]xpert testimony was essential to prove causation. Without testimony on causation, plaintiff failed to meet his burden on an essential element of the cause of action.")  "In California, causation must be founded upon expert testimony and cannot be inferred from the jury's consideration of the totality of the circumstances unless those circumstances include the requisite expert testimony on causation."  *Cottle v. Superior Court*, 3 Cal.App.4th 1367, 1384, 5 Cal.Rptr.2d 882 (1992).

To support that he satisfied the standard of care, Dr. Khurana relies on the declaration of Maureen Sims, M.D. ("Dr. Sims"), who is board-certified in pediatrics and neonatal perinatal medicine. Dr. Sims serves as a Regional Instructor for Neonatal Resuscitation for the American Association of Pediatrics and American Heart Association and as Professor Emeritus at the UCLA Medical School. During 1994-2009, Dr. Sims served as Director of Newborn Services at Olive View-UCLA Medical Center in Sylmar, California.  Based on Dr. Sims' review of medical records and depositions and her education, training and experience, Dr. Sims opines that "[a]ll aspects of Dr. Khurana's care and management of this patient were totally consistent with the standard of care applicable to neonatologists."  The grounds for Dr. Sims' opinion include:

1. "Dr. Khurana is a very experienced neonatologist in that he has . . . intubated hundreds of neonates for the purposes of ventilation assistance";
2. The neonatologist standard of care "does not require that a physician such as Dr. Khurana be physically present at the time of delivery of a patient such as Miguel";
3. Dr. Khurana's use of a three millimeter endotracheal tube, as opposed to a 3.5 millimeter endotracheal tube, did not violate the standard of care in that the three millimeter endotracheal tube "was sufficiently large to establish an effective airway" and "Miguel demonstrated improvement in heart rate, oxygen saturations, and color";
4. Obstruction of the three millimeter endotracheal tube does not support that Dr. Khurana violated the standard of care in that secretions "are common with intubated patients" and

1         "can cause obstructions of the endotracheal tube"; and

2     5.    Dr. Khurana met the standard of care when he "quickly, appropriately, and successfully re-intubated the patient with a 3.5 mm endotracheal tube when it became apparent that there was an obstruction."

Dr. Sims opined "there is no evidence which would demonstrate any causal connection between any departure or deviation from the standard of care on the part of Dr. Khurana, and any of the claimed injuries and damages of the minor plaintiff. It is my further opinion to a reasonable degree of medical probability, that is, more than 50/50 probability, that the patient's injuries and damages are not the legal result of any negligent act or omission on the part of Dr. Khurana."

Dr. Khurana challenges plaintiffs' ability "to provide competent expert opinion testimony showing Dr. Khurana violated the standard of care applicable to neonatologists."

Dr. Sims' declaration establishes that Dr. Khurana met the applicable standard of care. Plaintiffs offer nothing to challenge Dr. Sims' expert opinions. Evaluation of Dr. Khurana's care rests with qualified experts. In the absence of plaintiffs' opposition, the record reflects no link between Kr. Khurana's care and causation of plaintiffs' alleged injuries to warrant summary judgment on plaintiffs' negligence claims.

**NIED**

The FAC's (third and fourth) NIED claims allege that Dr. Khurana failed to provide Miguel and Ms. Gonzalez "necessary medical treatment" to cause Mr. and Ms. Gonzalez severe emotional distress.

Dr. Khurana contends that his satisfaction of the standard of care bars Mr. and Ms. Gonzalez' NIED claims.

NIED is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply. *Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th 124, 129, 24 Cal.Rptr.2d 587 (1993). California law recognizes that "there is no independent tort of negligent infliction of emotional distress" in that "[t]he tort is negligence, a cause of action in which a duty to the plaintiff is an essential element." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984, 25 Cal.Rptr.2d 550 (1993). The existence of a duty is a question of law. *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.,* 48 Cal.3d 583, 588, 257 Cal.Rptr. 98 (1989).

NIED includes "at least two variants of the theory" – "bystander" cases and "direct victim" cases. *Wooden v. Raveling*, 61 Cal.App.4th 1035, 1037, 71 Cal.Rptr.2d 891, 892 (1998). "The distinction between the 'bystander' and the 'direct victim' cases is found in the source of the duty owed by the defendant to the plaintiff." *Burgess v. Superior Court*, 2 Cal.4th 1064, 1072, 9 Cal.Rptr.2d 615 (1992). "Bystander" claims are typically based on breach of a duty owed to the public in general (*Christensen v. Superior Court*, 54 Cal.3d 868, 884, 2 Cal.Rptr.2d 79 (1991)), whereas a right to recover for emotional distress as a "direct victim" arises from the breach of a duty that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of the defendant's preexisting relationship with the plaintiff (*Burgess*, 2 Cal.4th at 1073-1074, 9 Cal.Rptr. 615; *Marlene F.*, 48 Cal.3d at 590, 257 Cal.Rptr. 98). "[B]ystander liability is premised upon defendant's violation of a duty not to negligently cause emotional distress to people who observe conduct which causes harm to another." *Burgess*, 2 Cal.4th at 1073, 9 Cal.Rptr. 615.

"'Bystander' cases are cases in which the plaintiff was not physically impacted or injured, but instead witnessed someone else being injured due to defendant's negligence." *Wooden*, 61 Cal.App.4th at 1037, 71 Cal.Rptr.2d at 892. "'Direct victim' cases are cases in which the plaintiff's claim of emotional distress is not based upon witnessing an injury to someone else, but rather is based upon the violation of a duty owed directly to the plaintiff." *Wooden*, 61 Cal.App.4th at 1038, 71 Cal.Rptr.2d at 893-894. In "direct victim" cases, "well-settled principles of negligence are invoked to determine whether all elements of a cause of action, including duty, are present in a given case." *Burgess*, 2 Cal.4th at 1073, 9 Cal.Rptr.2d 615. "[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and emotional distress is proximately caused by that breach of duty." *Potter*, 6 Cal.4th at 985, 25 Cal.Rptr.2d 550.

Similar to plaintiffs' negligence claims, their NIED claims fail with the absence of evidence that Dr. Khurana fell below the applicable standard of care. The record lacks facts to support either a bystander or direct victim case of NIED. Dr. Khurana is entitled to summary judgment on plaintiffs' NIED claims.

///

**Loss Of Consortium**

The FAC alleges a (fifth) loss of consortium claim for Mr. Gonzalez in that based on Dr. Khurana's conduct and "resultant injuries" to Ms. Gonzalez, Mr. Gonzalez has suffered a loss of love, including sexual relations.

A "common law rule has arisen, granting either spouse the right to recover for loss of consortium caused by negligent injury to the other spouse." *Rodriguez v. Bethlehem Steel Corp.*, 12 Cal.3d 382, 393, 525 P.2d 669 (1974). "[I]n California each spouse has a cause of action for loss of consortium . . . caused by a negligent or intentional injury to the other spouse by a third party." *Rodriguez*, 12 Cal.3d at 409, 525 P.2d 669. Loss of consortium requires the allegedly injured spouse to have a viable claim. "Since he [plaintiff] has no cause of action in tort his spouse has no cause of action for loss of consortium." *Blain v. Doctor's Co.*, 222 Cal.App.3d 1048, 1067, 272 Cal.Rptr. 250 (1990).

Dr. Khurana concludes that since he violated no standard of care to support Ms. Gonzalez' claims, Mr. Gonzalez lacks a viable loss of consortium claim.

Dr. Khurana is correct. Mr. Gonzalez' loss of consortium claim fails with Ms. Gonzalez' claims. In the absence of Ms. Gonzalez' viable negligence or NIED claims, Dr. Khurana is entitled to summary judgment on Mr. Gonzalez' loss of consortium claim.

**CONCLUSION AND ORDER**

For the reasons discussed below, this Court:

1. GRANTS Dr. Khurana summary judgment; and
2. DIRECTS the clerk to enter judgment against plaintiffs Miguel Gonzalez, Jr., Maria Gonzalez, and Miguel Gonzalez and in favor of defendant Gurvir Khurana in that there is no just reason to delay to enter such judgment given that plaintiffs' claims against Dr. Khurana and his alleged liability are clear and distinct from claims against and liability of other defendants. *See* F.R.Civ.P. 54(b).

This action remains open as to remaining defendants.

IT IS SO ORDERED.

Dated:   September 21, 2011            /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE