UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL GONZALEZ, JR., a minor, by and through his guardian ad litem, Maria Gonzalez, MARIA GONZALEZ and MIGUEL GONZALEZ,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>Defendants. | CASE NO. 1:09-cv-00509-LJO-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT THE PETITION FOR COMPROMISE OF THE CLAIM OF MINOR MIGUEL GONZALEZ JR. BE GRANTED**<br><br>**OBJECTIONS DUE 10 DAYS** |

## I. INTRODUCTION

On November 2, 2011, Maria Gonzales ("Petitioner"), as the court-appointed guardian *ad litem* of the named minor, Plaintiff Miguel Gonzalez, Jr. ("Miguel"), filed a petition to approve the proposed settlement between Miguel and the United States of America ("United States"). On November 10, 2011, Defendant County of Kern, erroneously sued in the name of its agency, Kern Medical Center, filed a statement of non-opposition to the petition for approval of the proposed settlement between Miguel and the United States. (Doc. 66.)

On December 16, 2011, Plaintiffs filed an amended petition for compromise of the claim of minor Miguel Gonzalez, Jr. (Doc. 70.) The matter was heard on January 4, 2012. Thomas Donahue, Esq., appeared on behalf of Petitioner Maria Gonzalez, and Plaintiffs Maria Gonzalez,

Miguel Gonzalez, Sr., and Miguel Gonzalez, Jr., also appeared. (*See* Local Rule 202(d).) Assistant United States Attorney Alyson Berg, appeared on behalf of the United States.

After reviewing the amended petition and reviewing the terms of the settlement with the parties at the January 4, 2012, hearing, the Court finds that the proposed settlement agreement is fair and reasonable. For the reasons that follow, the Court RECOMMENDS that the amended "Petition for Compromise of the Claim of Minor Miguel Gonzalez, Jr. Pursuant to Settlement with Defendant United States of America" ("amended petition") BE APPROVED and GRANTED.

## II. FACTUAL BACKGROUND

This case was originally filed on February 8, 2008, in Kern County Superior Court by Plaintiffs Miguel Gonzalez, Jr., Maria Gonzalez, and Miguel Gonzalez, Sr. (collectively, "Plaintiffs") against Kern Medical Center, Clinica Sierra Vista, Luis Lopez, M.D., Deng Fong, M.D., and Gurvir Khurana, M.D. Petitioner was appointed guardian *ad litem* for Miguel. According to Petitioner, it was thereafter discovered that Defendant Clinica Sierra Vista and Defendant Luis Lopez, M.D., were deemed employees of the Public Health Services pursuant to the provisions of the Federally Supported Health Centers Assistance Act of 1992, 42 U.S.C. § 233, and therefore subject to the Federal Tort Claims Act ("FTCA"), codified at 28 U.S.C. §§ 2671-2680. (Doc. 70, 2:9-21.)

On March 18, 2009, Plaintiffs filed a complaint in this Court pursuant to the FTCA against the United States and simultaneously proceeded in state court against the remaining defendants. On September 17, 2009, Plaintiffs filed a First Amended Complaint naming the state-court defendants, Kern Medical Center and Gurvir Khurana, M.D.,[1] in this action and dismissed the state-court action in its entirety. (*See* Doc. 70, 2:19-21.)[2]

Plaintiffs' claims arise from the events occurring on the date of Miguel's birth, August 1, 2007, at the Kern Medical Center. According to Plaintiffs, when Petitioner presented for the delivery of Miguel, the child was "in complete breech presentation and at a minus 3 station." (Doc. 70, 4:8-

---

[1] Defendant Deng Fong, M.D. was not named in Plaintiffs' amended complaint. (*See* Doc. 23.)

[2] On September 21, 2011, judgment was entered in favor of defendant Gurvir Khurana. Thus, following completion of the settlement between the United States and Plaintiffs, the sole remaining defendant will be the County of Kern, erroneously sued in the name of its agency, Kern Medical Center.

2

9.) Dr. Luis Lopez, employed by the United States, improperly attempted to perform a vaginal breech delivery of the fetus. (Doc. 70, 4:10-11.) Plaintiffs assert that in doing so, Dr. Lopez violated the standard of care by recommending a vaginal delivery because only experienced physicians – which Dr. Lopez was not – should undertake such deliveries in situations of breech. (Doc. 70, 4:9-25.) As a result of Dr. Lopez' lack of sufficient experience, Plaintiffs contend that Miguel suffered traumatic delivery causing hypoxia, acidosis, and brain injury. (Doc. 70, 4:24-28.)

## III.   DISCUSSION

The amended petition has two essential parts. Petitioner, Miguel's guardian *ad litem*, requests that the settlement be approved and that, as part of the approval, the Court issue an order establishing a special needs trust for Miguel such that certain settlement proceeds may be paid into the trust. Thus, the two components of the petition are considered below.

**A.   The Settlement Between Minor Miguel Gonzalez, Jr. and the United States**

As a derivative of Federal Rule of Civil Procedure 17(c), district courts have a special duty to safeguard the interests of litigants who are minors. Rule 17(c) provides, in pertinent part, that a district court "must appoint a guardian *ad litem* – or issue another appropriate order – to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c). In the context of proposed settlements in suits involving minor plaintiffs, the district court's special duty requires it to "'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)).

In *Robidoux*, the United States Court of Appeals for the Ninth Circuit provided specific guidance "on how to conduct this independent inquiry." *Robidoux*, 638 F.3d at 1181. While the Ninth Circuit noted that district courts have typically applied state law and the local rules governing the award of attorney's fees to make the reasonableness and fairness determination, the court held that "this approach places an undue emphasis on the amount of attorney's fees provided for in a settlement, instead of focusing on the net recovery of the minor plaintiffs under the proposed agreement." *Id.* The Ninth Circuit held that, instead, district courts should "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement

is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Id.* at 1181-82. Further, the fairness of each minor plaintiff's net recovery should be evaluated "without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel – whose interests the district court has no special duty to safeguard." *Id.* at 1182 (citing *Dacanay*, 573 F.2d at 1078).

Beyond the substantive requirements in considering the compromise of a minor's claim, the Eastern District of California has issued Local Rules ("L.R.") that govern the procedure for submitting requests for approval of a proposed settlement or compromise of a minor. In actions in which a minor is represented by an appointed representative where the United States courts have exclusive jurisdiction, "the motion for approval of a proposed settlement or compromise shall be filed and calendared pursuant to L.R. 230." L.R. 202(b)(2); *see also* L.R. 202(b)(1).

Local Rule 202(b)(2) further provides that an application for approval of a settlement of a minor

> shall disclose, among other things, the age and sex of the minor or incompetent, the nature of the causes of action to be settled or compromised, the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, the manner in which the compromise amount or other consideration was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise, and, if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent. If reports of physicians or other similar experts have been prepared, such reports shall be provided to the Court. The Court may also require the filing of experts' reports when none [has] previously been prepared or additional experts' reports if appropriate under the circumstances . . . .

The amended petition tracks the language of the California Judicial Council form MC-350, which contains the "Petition to Approve Compromise of Disputed Claim or Pending Action or Disposition of Proceeds of Judgment for Minor or Person with a Disability" that is applicable in state-court proceedings. The amended petition offers a comprehensive overview of the terms of the settlement and sets forth the information necessary to consider approval of the settlement pursuant to both the Federal Rules of Civil Procedure, the Eastern District of California's Local Rules, and the Ninth Circuit's instruction in *Robidoux*.

**1.     Terms of the Proposed Settlement and Miguel's Net Recovery**

Defendant United States has offered consideration in the amount of $1,750,000.00 in exchange for a release of all Plaintiffs' claims. Under the terms of the settlement, $140,000.00 will be paid to Petitioner and her husband, Miguel Gonzalez, Sr. in consideration of their release of their claims for negligent infliction of emotional distress and their prospective claims for the wrongful death of their son.

The remainder of the settlement amount – $1,610,000.00 – will be paid in consideration of release of Miguel's claim against the United States. Miguel's medical expenses have been paid by Medi-Cal in the amount of $145,213.00. Pursuant to California Welfare & Institutions Code § 14124.72, Medi-Cal will accept $97,830.85 as full satisfaction of the lien. The difference between the $145,213.00 lien amount and the negotiated amount of $97,830.85 represents the reasonable share of attorney's fees and litigation costs that will be paid to counsel for Petitioner. Thus, of the $1,610,000.00 proposed settlement amount, $145,213.00 will be deducted as satisfaction of Medi-Cal's lien for medical services provided (which includes attorney's fees and costs).

Additionally, $261,384.72 in attorney's fees will be paid out of the gross settlement amount to Plaintiffs' counsel. The amount to be paid in attorney's fees is less than 25% of the total settlement, and conforms with the requirements of 29 U.S.C. § 2678. Also deducted from the gross settlement amount will be $200,000.00 as payment for costs and cost reserves. The net amount of the settlement to Miguel, therefore, is $1,003,402.28 ($1,610,000.00 less the sum of $145,213.00, $261,384.72, and $200,000.00).

Miguel's net settlement amount will be used to purchase an annuity and the remainder of the cash funds will be paid into a special needs trust for the benefit of Miguel. Specifically, $500,000.00 of the net settlement will be used to purchase an annuity which provides for periodic payments in the amount of $1,912.00 per month for Miguel's lifetime, guaranteed for 30 years. These periodic payments will be deposited into a special needs trust for the benefit of Miguel. The first payment is currently set to be made on April 11, 2012, by Liberty Life Assurance Company of Boston, or its assignee. After Miguel's death, guaranteed payments will be made to his estate. The total amount of the guaranteed payments is $688,320.00. The total amount of the anticipated payments, if Miguel

lives to the life expectancy as computed by the annuity company, will amount to $1,785,600.00. The remaining $503,402.28 of the net settlement ($1,003,402.28 less the sum of $500,000 for the purchase of the annuity) will be distributed to a special needs trust for the benefit of Miguel.

### 2.     The Reasonableness and Fairness of the Settlement Amount

In *Robidoux*, the Ninth Circuit directed district courts considering the compromise of a minor's claim to examine the fairness and reasonableness of the net settlement amount in view of the facts of the case, the minor's specific claim, and the recovery in similar cases. Petitioner asserts that the settlement amount was reached through mediation. Petitioner's counsel has extensive experience mediating and handling cases of this nature, and a considerable amount of time and resources were devoted to fully developing the facts surrounding Miguel's claim against the United States. Plaintiffs consulted and retained nine experts, and over 700 pages of expert reports were generated. (Doc. 70, Declaration of Thomas Donahue, p. 16, ¶¶ 6-7.) Miguel was examined by multiple physicians, and his life care needs were assessed by Dr. Montes and Barbara Greenfield, R.N. (Doc. 70-2.) The parties completed the depositions of the named defendants who were involved in the labor, delivery, and resuscitation as well as numerous nurses who were involved in the events. In total, 18 witness and party depositions were completed. (Doc. 70, p. 17, ¶ 5.) Over 25 deposition subpoenas were served by the parties seeking medical and billing records. (Doc. 17, p. 17, ¶ 5.) The facts of the case were diligently developed and were known to the parties when the dispute was privately mediated and a settlement was reached between Plaintiffs and the United States.

In addition to consideration of the facts and expert reports obtained and developed, Petitioner's counsel considered the settlement amount to be reasonable and fair in view of the fact that it resolves the claim without any risk to Miguel and avoids the increased costs of paying experts to testify at trial. Petitioner asserts that the net recovery to Miguel is also reasonable and fair in light of the facts of the case, particularly because evidence was discovered that may have resulted in diminished liability at trial. (Doc. 70, 6:1-17.) Thus, despite Plaintiffs' assertion that Miguel's special damages exceed $10,000,000.00, Petitioner contends that the $1,003,402.28 net settlement of Miguel's claim is reasonable and fair.

The facts of the case were thoroughly investigated and developed over the course of approximately two years. Negotiation of the settlement was achieved through private mediation following completion of nearly all fact discovery, which was substantial, and after obtaining multiple expert opinions regarding causation and Miguel's damages. Upon reviewing the facts of the case and Miguel's claim against the United States, the Court finds that the proposed settlement, and more specifically Miguel's net recovery of $1,003,402.28, is fair and reasonable.

**B.  The Establishment of a Special Needs Trust for the Benefit of Miguel**

The Petitioner requests that the Court order that a special needs trust be established for the benefit of Miguel, and that it be funded with his net settlement recovery. It is in the best interest of the minor that a trust be established so that the settlement funds may be used for Miguel's special needs during his life. The Court has reviewed the terms of the proposed trust and finds, as set forth below, that the California statutory requirements related to the formation and approval of a special needs trust have been met and RECOMMENDS that the proposed special needs trust be approved and established.

**1.  Requirements of Probate Code § 3604(b)**

Pursuant to the California Probate Code, "[i]f a court makes an order under Section 3602 or 3611 that money of a minor or person with a disability be paid to a special needs trust, the terms of the trust shall be reviewed and approved by the court and shall satisfy the requirements of this section." Cal. Prob. Code § 3604(a)(1). Section 3604(b) provides that

> [a] special needs trust may be established and continued under this section only if the court determines all of the following:
>
> (1) That the minor or person with a disability has a disability that substantially impairs the individual's ability to provide for the individual's own care or custody and constitutes a substantial handicap.
>
> (2) That the minor or person with a disability is likely to have special needs that will not be met without the trust.
>
> (3) That money to be paid to the trust does not exceed the amount that appears reasonably necessary to meet the special needs of the minor or person with a disability.

Cal. Prob. Code § 3604(b)(1)-(3). The petition and the exhibits attached to the declaration of Mr. Donahue set forth the extent of Miguel's disability, indicate that it substantially impairs his ability

to provide for his own care, and establish that Miguel's disability constitutes a substantial handicap. Dr. Ira T. Lott, pediatric neurologist, opines that Miguel has cerebral palsy with a severe cognitive-language deficit and that this is a life-long, permanent neurological disability. (Doc. 70-1, p. 5.)

Further, Miguel is likely to have special needs that will not be met without the trust. For example, according to Dr. Montes who reviewed and concurred with a Life Care Plan prepared by Barbara Greenfield that outlined Miguel's future care needs, Miguel will need both non-skilled and skilled nursing care, diagnostic testing, medical equipment, supplies, and continuing therapies. (Doc. 70-2, p. 2-13.) To the extent any of these care requirements are not funded by Medi-Cal, Miguel will need funds to provide for these special needs. Finally, Miguel's life expectancy is estimated to be at least age 60; thus, the net settlement funds to be deposited into the proposed special needs trust do not appear to exceed that which is reasonably necessary to meet Miguel's special needs over his lifetime. Pursuant to these facts, the terms of the trust satisfy the requirements of Probate Code Section 3604(b).

**2.     Requirement of Probate Code § 3604(d)**

Probate Code Section 3604(d) requires that

> A court order under Section 3602 or 3611 for payment of money to a special needs trust shall include a provision that all statutory liens in favor of the State Department of Health Services, the State Department of Mental Health, the State Department of Developmental Services, and any county or city and county in this state shall be satisfied first.

Here, Medi-Cal has a lien for medical service provided to Miguel in the amount of $145,213.00. Section 14124.72 of the California Welfare & Institution Code provides the following, in relevant part:

> Where the action or claim is brought by the beneficiary alone and the beneficiary incurs a persona liability to pay attorney's fees and costs of litigation, the director's claim for reimbursement of the benefits provided to the beneficiary shall be limited to the reasonable value of benefits provided to the beneficiary under the Medi-Cal program less 25 percent which represents the director's reasonable share of attorney's fees paid by the beneficiary and that portion of the cost of litigation expenses determined by multiplying by the ratio of the full amount of the reasonable value of the benefits so provided to the full amount of the judgment, award, or settlement.

Cal. Welfare & Institutions Code § 14124.72(d). Pursuant to California Welfare & Institutions Code § 14124.72, Medi-Cal has agreed to accept $97,830.85 as full satisfaction of the lien and the

8

difference, which is $47,382.15, will be paid to petitioner's counsel as the reasonable share of the attorney's fees and litigation costs.[3] This is the only outstanding lien under Probate Code Section 3604(d), and it will be paid pursuant to the terms above, i.e., $97,830.85 to California Department of Health Care Services and $47,382.15 to Petitioner's counsel as attorney's fees and costs. Thus, the requirements of Probate Code Section 3604(d) are satisfied.

### 3. Compliance with California Rules of Court 7.903(c)(4)

As the proposed trust will be subject to the continuing jurisdiction of the California Superior Court for the County of Kern, the Court also considers the trust term's compliance with the California Rules of Court. Rule 7.093 is applicable to trusts that are funded by court order, and Rule 7.903(c) requires the following, in relevant part:

> Except as provided in (d) [governing only trusts with total assets of less than $20,000], unless the court otherwise orders for good cause shown, trust instruments for trusts funded by court order must:
>
> (1)  Not contain "no-contest provisions;
>
> (2)  Prohibit modification or revocation without court approval;
>
> (3)  Clearly identify the trustee and any other person with authority to direct the trustee to make distributions;
>
> (4)  Prohibit investments by the trustee other than those permitted under Probate Code section 2574;
>
> (5)  Require persons identified in (3) to post bond in the amount required under Probate Code section 2320 et seq.;
>
> (6)  Require the trustee to file accounts and reports for court approval in the manner and frequency required by Probate Code sections 1060 et seq. and 2620 et seq.;
>
> (7)  Require court approval of changes in trustees and a court order appointing any successor trustee; and
>
> (8)  Require compensation of the trustee, the members of any advisory committee, or the attorney for the trustee, to be in just and reasonable amounts that must be fixed and allowed by the court. The instrument may provide for periodic payments of compensation on account, subject to the requirements of Probate Code section 2643 and rule 7.755.

---

[3] Although the Petition sets forth that the attorney's fees amount to $47,385.12 pursuant to Cal. Welfare & Institutions Code § 14124.72(d), it was clarified at the hearing that **$47,382.15** is the correct amount of the attorney's fees **and** costs to be paid to Plaintiff's counsel pursuant to Section 14124.72(d).

The proposed trust document does not contain a no-contest provision. (*See* Doc. 70-8, p. 1-11.) Article III of the proposed trust states that the trust is irrevocable and not subject to amendment absent a court order approving a modification or amendment. (Doc. 70-8, p.7, Art. III.) The trustee is clearly identified as Wells Fargo Bank, and allows the trustee to "hire a case worker or other persons with expertise relating to the special needs of the Beneficiary, at the expense of the Trust, to advise it regarding the special needs of the beneficiary." (Doc. 70-8, p. 2-3, Art. I, subsections 1-2.) The trustee is not explicitly required to post a bond, but a "trust company," as defined in Probate Code Section 83, "may not be required to give a bond." Probate Code § 15602. (*See* Doc. 70-8, p. 2, Art. 1, subsection 1.)

The powers of the trustee include the ability to invest and reinvest all or any part of the trust as provided in Probate Code Section 2574. (Doc. 70-8, p. 7, Art. IV, subsection 2.) Petitioner requests, however, that the trustee also be permitted to invest in mutual funds, including proprietary mutual funds authorized to be purchased by corporate trustees under Financial Code § 1561.1(b), to better diversify this relatively small trust. Probate Code § 2574(c) permits Petitioner to seek court authorization for any investment. As the purchase of mutual funds will assist the trustee in diversifying the trust, and is thus in the best interests of the minor, the Court recommends that such investments be authorized.

The proposed trust also provides that the trustee is obligated to submit a court accounting within one year from the date the trustee is appointed, and biennially thereafter, as well as "at any time requested by the Trustee or other interested parties, in the form required by Probate Code § 1060 *et seq.*" (Doc. 70-8, p. 9, Art. V, subsection 1.) The trustee must "submit annual accountings as provided in California Probate Code Sections 16062 and 16063." (Doc. 70-8, p. 9, Art. V, subsection 1.). Any successor trustee must be appointed by the court having jurisdiction over the trust, and be bonded to the extent required by Probate Code Section 2320. (Doc. 70-8, p. 2, Art. 1, subsection 1.) Finally, the proposed trust provides that the trustee receive "just and reasonable compensation," to be paid from the trust, in an amount allowed by the Probate Code and awarded by a court with jurisdiction over the trust. (Doc. 70-8, p. 3, Art. 1, subsection 3.) The terms of the proposed trust, as discussed above, comply with California Rules of Court, Rule 7.093(c).

**4.     Conclusion**

As set forth above, the proposed trust meets the requirements of special needs trusts under California law.  Thus, the Court recommends that the proposed trust be approved and established, and that Miguel's net settlement recovery be paid into the special needs trust, pursuant to the parties' settlement agreement and as specifically detailed below.

### IV.     CONCLUSION AND RECOMMENDATIONS

The Court finds that the $1,003,402.28 net settlement of minor Miguel's claim against the United States is fair and reasonable.  The Court also finds that the proposed special needs trust for the benefit of Miguel meets the statutory and procedural requirements under California state law.

Accordingly, the Court RECOMMENDS that:

1.  The proposed settlement between minor Miguel Gonzalez and the United States, as set forth in the "Stipulation For Compromise Settlement And Release of Federal Tort Claims Act Claims Pursuant to 28 U.S.C. § 2677," BE APPROVED as fair and reasonable;

2.  The "Petition for Compromise of the Claim of Minor Miguel Gonzalez, Jr." BE GRANTED;

3.  The United States of America, subject to the approval of the Attorney General of the United States, BE REQUIRED to disburse the proceeds of the settlement in the following manner:

   a.  The United States of America will pay by wire transfer to JMW Settlements, Inc. Client Funds Account, one million seven hundred fifty thousand dollars ($1,750,000.00);

   b.  JMW Settlements, Inc. Settlements, Inc. will disburse the sum of one million two hundred fifty thousand dollars ($1,250,000.00) ("Upfront Cash") from the Client Funds Account to Miguel Gonzalez, Jr., a minor by and through his guardian ad litem, Maria Belen Gonzalez, Miguel Gonzalez, Sr., and Donahue & Horrow, LLP, their attorneys of record;

   c.  Donahue & Horrow, LLP shall distribute the Upfront Cash as follows:

        (i)    $140,000.00, less attorney's fees in the amount of $46,666.67, payable to Plaintiffs Miguel Gonzalez, Sr. and Maria Gonzalez as settlement of their claims;

        (ii)    Attorney's fees in the amount of $261,384.72 drawn and payable to the order of Plaintiffs' attorney, Donahue & Horrow, LLP;

        (iii)    Reimbursement for costs and expenses and cost reserves in the amount of $200,000.00 payable to Donahue & Horrow, LLP;

        (iv)    Payment of the Medi-Cal lien in the amount of $145,213.00;

        (v)    The balance of the Upfront Cash, $503,402.28, shall be deposited into a special needs trust established on behalf of Minor Miguel Gonzalez, Jr.; and

    d.    The United States of America will pay the sum of five hundred thousand dollars ($500,000.00) to an annuity company rated A or A+ by A.M. Best and Co. to purchase a single premium annuity contract on behalf of Plaintiff Miguel Gonzalez, Jr., which by its terms provides Miguel the right to receive periodic monthly payments for his life or 30 years certain, whichever is longer;

4.    The proposed special needs trust BE ESTABLISHED as follows:

    a.    The terms of the special needs trust be APPROVED and ESTABLISHED as set forth in the proposed trust document filed at docket no. 70-8, p. 2-11;

    b.    The trust be funded with:

        (i)    Upfront Cash in the amount of $503,402.28;

        (ii)    Periodic monthly annuity payments;

    c.    Wells Fargo Bank be appointed as trustee of the special needs trust;

    d.    The trustee be permitted to invest in mutual funds, including proprietary mutual funds, pursuant to Probate Code § 2574 and Financial Code § 1561.1; and

|   |   |   |
|---|---|---|
| | e. | The special needs trust shall be subject to the continuing jurisdiction of the Superior Court of Kern County; |
| 5. | | The Court retain jurisdiction over the special needs trust until funding is complete and jurisdiction is transferred to the Kern County Superior Court subject to the following: |
| | a. | Petitioner BE REQUIRED to file a status report every 45 days regarding the status of disbursement of the settlement funds; |
| | b. | Petitioner BE REQUIRED to petition Kern County Superior Court to accept transfer jurisdiction over the special needs trust when disbursement of the settlement proceeds is complete; |
| | c. | Petitioner BE REQUIRED to file in this Court proof of Kern County Superior Court's acceptance of transfer of jurisdiction; |
| 6. | | Petitioner Maria Gonzalez be AUTHORIZED and DIRECTED to execute any and all documents reasonably necessary to carry out the terms of the settlement; |
| 7. | | Petitioner Maria Gonzalez BE RESPONSIBLE for maintaining a current address on behalf of Miguel Gonzalez, Jr., with the annuity company and the United States of America, until such time as the above payment schedule is completed; |
| 8. | | Petitioner Maria Gonzalez BE REQUIRED to submit proof of funding of the annuity when it is completed; and |
| 9. | | That all scheduling deadlines in this case BE VACATED and reset as necessary upon completion of the settlement between Plaintiffs and the United States. |

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within ten (10) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C.

§ 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:**     **January 6, 2012**                            /s/ Sheila K. Oberto
                                                              UNITED STATES MAGISTRATE JUDGE